Tran Anh PHUONG, Plaintiff,

v.

NATIONAL ACADEMY OF
SCIENCES, Defendant.

Civ. A. No. 93–2269 PLF.

United States District Court,
District of Columbia.

Oct. 12, 1995.

Barbara B. Hutchinson, New Carrollton, MD, for plaintiff.

William F. Causey, Washington, D.C., for defendant.

*MEMORANDUM OPINION
AND ORDER*

PAUL L. FRIEDMAN, District Judge.

This case is before the Court on defendant's motion for partial summary judgment

on statute of limitations grounds and to strike portions of plaintiff's amended complaint. Plaintiff opposes the motion. Having considered the papers filed by the parties, the Court grants judgment for defendant on plaintiff's Fair Labor Standards Act claim, but denies summary judgment on plaintiff's Age Discrimination in Employment Act claim. In addition, the Court strikes plaintiff's claims for compensatory and punitive damages and her demand for a jury trial on her Title VII claims of discrimination on the basis of race and national origin.

## I. BACKGROUND

Plaintiff, a fifty-nine year old Vietnamese female, was employed by the National Academy of Sciences ("NAS") for over 18 years. She began her employment at NAS in May 1973. In April 1991, her supervisor in the Commission on Engineering and Technical Systems ("CETS") at NAS was Executive Director Archie L. Wood, a white male. Ms. Phuong was Mr. Wood's Executive Assistant.

On April 9, 1991, Mr. Wood informed plaintiff that he was delaying her annual performance review for three months in order to better assess her performance. Pl.'s Ex. 1; Deposition of Archie L. Wood ("Wood Dep.") at 62. He then assigned plaintiff new duties, requiring her to learn and apply several computer software applications with which he was aware that she previously had no familiarity. Mr. Wood set a three month deadline by which plaintiff was required to have learned how to use the software and have completed setting up various databases. Pl.'s Ex. 1; Wood Dep. at 38–39.

In July 1991, plaintiff informed Mr. Wood that she could not complete the work without working overtime and informed him that indeed she had been working overtime in an effort to complete the work. Plaintiff maintains that Mr. Wood never gave her approval to work overtime and that Ms. Marlene Beaudine and Ms. Mary Frances Lee, two members of the CETS executive office staff, both told her that she was not approved to work overtime. Deposition of Tran Ahn Phuong ("Phuong Dep.") at 1–4. Plaintiff claims that while she worked overtime, she did not report the overtime on her pay sheets. Phuong Dep. at 3–4. Mr. Wood asserts that he did not object to plaintiff working overtime and would not have objected to her claiming overtime pay. Wood Dep. at 42–47.

In mid-July 1991, Mr. Wood concluded that plaintiff could not handle her "new" job. Around that time Mr. Wood discussed with Ms. Beaudine and Ms. Lee the fact that plaintiff was approaching retirement age. Wood Dep. at 50. In July Mr. Wood also informed Mr. Charles Starliper, the white male Personnel Director of NAS, that plaintiff was not performing satisfactorily. On July 22, 1991, Mr. Wood informed Mr. Starliper that he wanted plaintiff removed from her position or that she be made a part-time employee. On August 16, 1991, Mr. Starliper informed plaintiff that her options were either to take a demotion or to reduce her hours to part-time. Throughout the entire period that Mr. Wood was her direct supervisor, he never documented in writing the deficiencies that he saw in plaintiff's work performance and never provided her with a written performance appraisal.

Plaintiff last performed unreported overtime work on August 28, 1991, a date that fell within the pay period ending on September 9, 1991. Phuong Dep. at 164. On August 30, 1991, plaintiff received a written notice of demotion. Plaintiff was absent from the workplace from August 30, 1991, through September 8, 1991, because of a back injury. She returned for one day on September 9, 1991, but did not return thereafter. She received worker's compensation benefits for the period September 10, 1991, through October 22, 1991. At some unspecified time, plaintiff was replaced by Teree Dittmar, a white female who was younger than plaintiff. Pl.'s Ex. 3. Ms. Dittmar subsequently was removed from the position because of an attendance problem that pre-dated her appointment to plaintiff's former position. Pl.'s Ex. 3.

On September 25, 1991, plaintiff wrote a memorandum to Mr. Starliper outlining the discriminatory and unfair practices to which she believed she had been subjected. Pl.'s Ex. 4. On September 27, 1991, plaintiff submitted a letter of resignation stating that her

resignation was due to her physical injuries and would be effective as of October 15, 1991. Phuong Dep. at 198–99; Def's Ex. 3. On October 22, 1991, she contacted Mr. Starliper to postpone the effective date of her resignation until November 1, 1991. On November 4, 1991, plaintiff filed a complaint with the District of Columbia Department of Human Rights. On November 1, 1993, she filed this civil action.

The Court previously denied defendant's motion to dismiss for failure to exhaust administrative remedies and stayed the action for 30 days in order to permit plaintiff an opportunity to obtain a right to sue letter from the EEOC. Upon a theory of equitable tolling, the Court denied defendant's motion to dismiss plaintiff's age discrimination claim. The Court also found that plaintiff's Fair Labor Standards Act claim was adequately pled to avoid summary dismissal on statute of limitations grounds.

## II. DISCUSSION

■ Under Rule 56, Fed.R.Civ.P., summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *see also Washington Post Co. v. U.S. Dept. of Health and Human Services,* 865 F.2d 320, 325 (D.C.Cir.1989). In discrimination cases the Court "must be extra-careful to view all the evidence in the light most favorable" to plaintiff. *Ross v. Runyon,* 859 F.Supp. 15, 21–22 (D.D.C.1994). But the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed. R.Civ.P.; *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d

265 (1986); *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. at 2511.

### A. Fair Labor Standards Act and Age Discrimination in Employment Act Claims

Until November 21, 1991, both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.,* and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.,* drew their statutes of limitations from the Portal-to-Portal Pay Act of 1947, 29 U.S.C. §§ 255, 259. Under the Portal-to-Portal Pay Act, an action must be commenced within two years from the date the cause of action accrues, unless the violation was willful, in which case the statute of limitations is three years. 29 U.S.C. § 255. Addressing the statute of limitations under the FLSA, the Supreme Court has held that willfulness exists if the "employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988). *See Hazen Paper Co. v. Biggins,* —— U.S. ——, ——, 113 S.Ct. 1701, 1709, 123 L.Ed.2d 338 (1993); *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 126, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985).

The Civil Rights Act of 1991 deleted the references in the ADEA to the statute of limitations set forth in the Portal-to-Portal Pay Act and adopted the provision of Title VII of the Civil Rights Act, requiring that plaintiff bring suit within 90 days of receiving a right to sue letter from the EEOC. 29 U.S.C. § 626. The only courts of appeals that have considered the effect of the 1991 Act on the ADEA's statute of limitations have concluded that the amended statute of limitations period applies to all civil actions filed after the enactment of the 1991 Civil Rights Act, even if the claims accrued before the passage of the 1991 Act. *See Garfield v. J.C. Nichols Real Estate,* 57 F.3d 662, 665 (8th Cir.1995), *petition for cert. filed,* 64 U.S.L.W. 3167 (September 11, 1995); *Vernon*

*v. Cassadaga Valley Central School District,* 49 F.3d 886, 889–90 (2d Cir.1995); *St. Louis v. Texas Worker's Compensation Comm'n,* 65 F.3d 43 (5th Cir.1995). The District of Columbia Circuit has not yet had occasion to consider whether the Civil Rights Act of 1991 alters the statute of limitations for actions accruing prior to its enactment.

 Plaintiff concedes that the last day she performed any overtime work was on August 28, 1991, during the pay period ending September 9, 1991. The latest possible date on which plaintiff's FLSA claim could have accrued therefore was September 9, 1991. This civil action was filed on November 1, 1993. Because the Portal-to-Portal Pay Act limitations period continues to apply to FLSA claims, plaintiff's November 1, 1993, complaint was untimely *unless* plaintiff can benefit from the three year statute of limitations for a "willful" violation of the FLSA.

While plaintiff's amended complaint alleges that the failure of NAS to compensate her for overtime hours that she had to work in order to complete her assignments was "willful and intentional," these allegations are conclusory and unsupported by specific factual allegations or evidence, and they are contradicted by her own deposition testimony. Plaintiff testified in her deposition that she was aware of and understood the overtime policy of NAS and whenever she recorded overtime hours on her pay sheets she was paid for them, regardless of whether they had been pre-approved by her supervisors. Phuong Dep. at 57, 207, 208. Plaintiff conceded that there was never a time when she recorded overtime that it was not paid to her. *Id.* at 170. She acknowledged that she never recorded the overtime that she now claims she is due. *Id.* at 168–70. Moreover, in an August 26, 1991, Memorandum to plaintiff from Carolyn Hall in the Office of Personnel and Appointments at NAS, Ms. Hall wrote:

"Charlie [Starliper] obtained your calendar from your office and asked me to forward it to you so that you can figure any unreported overtime for which you have not been paid. Please report it to him as soon as you have been able to establish the correct days and amounts." Def.'s Ex. 1 to Reply.

The Court simply cannot conclude on this evidence that a reasonable factfinder could find that defendant's conduct was "willful." Plaintiff's complaint, which was filed more than two years after her FLSA claim accrued, thus was untimely. The Court therefore enters judgment for defendant on the FLSA claim.

 As to plaintiff's ADEA claim, the Court finds persuasive the reasoning of those courts that have held that the limitations period enacted in the Civil Rights Act of 1991 should apply to claims filed after its enactment, even if the cause of action accrued beforehand. *See Garfield v. J.C. Nichols Real Estate,* 57 F.3d at 665; *Vernon v. Cassadaga Valley Central School Dist.,* 49 F.3d at 889–90. The Civil Rights Act of 1991 requires a plaintiff to bring a suit under the ADEA within 90 days after receiving a right to sue letter from the EEOC. 29 U.S.C. § 626(e). While there were some irregularities in connection with the timing of plaintiff's filings before the EEOC, the Court has excused those errors for equitable reasons. Transcript of December 13, 1994, Hearing at 49–52. In addition, although this action was filed *prior* to plaintiff receiving a right to sue letter from the EEOC, the Court stayed proceedings to permit plaintiff to exhaust her administrative remedies. *Id.* at 52–53. Plaintiff now has received her right to sue letter. Accordingly, the Court denies summary judgment on statute of limitations grounds with respect to plaintiff's claim under the ADEA.[1]

---

1. Even if the 1991 Amendments to the ADEA do not apply to this action, the Court finds that plaintiff's complaint would have been timely filed under the statute of limitations provision previously in effect. Plaintiff's amended complaint alleges that defendant's actions from April 1991 through November 1, 1991, were "willful and intentional." Amended Complaint ¶¶ 13, 15, 17. The parties agree that prior to Mr. Wood taking over as plaintiff's supervisor, "plaintiff had performed quite well in her work." Def.'s Statement of Material Facts at ¶ 2. Based largely on the testimony of plaintiff's supervisor, Paul Wood, plaintiff has described a course of events which, if true, suggests that defendant, with full awareness that plaintiff's retirement date was approaching, took actions that set plaintiff up to fail. *See Wiehoff v. GTE Directories Corp.,* 61 F.3d 588, 593 (8th Cir.1995); *Shager v. Upjohn Co.,* 913 F.2d 398, 406 (7th Cir.1990). Viewing

**16**

## B. Title VII Claims

Defendant also moves to strike plaintiff's demand for a jury trial and her claim for punitive and compensatory damages with respect to her Title VII claims of discrimination and her ADEA claim. Before Congress passed the Civil Rights Act of 1991, 42 U.S.C. § 1981a, a Title VII plaintiff was limited to equitable relief and was not entitled to a jury trial. The 1991 Act allows a plaintiff to pursue compensatory and punitive damages and provides for a corresponding right to a jury trial. 42 U.S.C. § 1981a(b), (c). In *Landgraf v. USI Film Products,* —— U.S. ——, ——, 114 S.Ct. 1483, 1508, 128 L.Ed.2d 229 (1994), the Supreme Court held that the damages and jury trial provisions do not apply retroactively when both the alleged unlawful conduct and the filing of the complaint occurred before November 21, 1991. Plaintiff seeks to distinguish her case because although the alleged discriminatory conduct took place prior to November 21, 1991, this civil action was filed after that date. Plaintiff therefore maintains that defendant was on notice of the possibility that a plaintiff would seek compensatory and punitive damages and demand a jury trial.

■ In holding that the Civil Rights Act of 1991 did not apply retroactively to cases pending at the time the 1991 Act became effective, the Supreme Court explained that "[a]pplying the entire Act to cases arising from preenactment conduct would have important consequences." *Landgraf v. USI Film Products,* —— U.S. at ——, 114 S.Ct. at 1493. The Court observed that the "[r]etrospective imposition of punitive damages would raise a serious constitutional question" by retroactively imposing liability as a punishment, similar to a criminal sanction. *Id.* at ——, 114 S.Ct. at 1505. And, because "compensatory damages are quintessentially backward-looking," to permit such an award to compensate a victim for events antedating the enactment of the 1991 Civil Rights Act "would attach an important new legal burden to the [preenactment] conduct." *Id.* at —— – ——, 114 S.Ct. at 1505–06. The Court also noted that "the jury trial option must stand or fall with the attached damages provisions" because jury trials were available only if compensatory or punitive damages were sought. *Id.* at ——, 114 S.Ct. at 1505. Although *Landgraf* did not specifically address the circumstances of a case such as plaintiff's, the Supreme Court's focus on preenactment conduct, and its rationale for prohibiting retroactive application, suggest that plaintiff's claims for compensatory and punitive damages do not survive a *Landgraf* analysis and must be stricken. As a consequence, her jury demand on her Title VII claims must also be rejected.

■ The Supreme Court's holding in *Landgraf,* however, has no effect at all on plaintiff's entitlement to a jury trial on her ADEA claim. The National Academy of Sciences is a private, non-governmental, non-profit corporation. Although it was chartered by Congress, 36 U.S.C. §§ 251–254, it is not a governmental agency. *Herbert v. National Academy of Sciences,* 974 F.2d 192, 193 (D.C.Cir.1992). Even before the 1991 Act, nonfederal employees such as Ms. Phuong were entitled to a jury trial of "any issue of fact" as a result of a violation of the ADEA. 29 U.S.C. § 626(c)(2); *see Lorillard v. Pons,* 434 U.S. 575, 585, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978). Plaintiff's jury demand will not be stricken with regard to her ADEA claim.

Nor will plaintiff's damage claims under the ADEA be stricken. Plaintiff seeks "backpay, retirement benefits, health benefits, medical expenses, life insurance and other emoluments plus an additional amount for liquidated damages ... future lost wages, retirement and all other benefits lost...." There is support for the elements of damages sought in both the statute and the caselaw. 29 U.S.C. § 626(b) (liquidated damages); *Commissioner of Internal Revenue v. Schleier,* —— U.S. ——, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995) (backpay); *McKennon v. Nashville Banner Pub.,* —— U.S. ——, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) (front pay); *id.* at ——, 115 S.Ct. at 885 (the purpose of the ADEA is to compensate the victim and

---

this evidence in the light most favorable to plaintiff, as it must on summary judgment, the Court concludes that if there was discrimination here, it may well have been willful.

deter discriminatory conduct); *Lewis v. Federal Prison Industries*, 953 F.2d 1277, 1279 (11th Cir.1992) (retirement benefits); *American Ass'n of Retired Persons v. Farmers Group, Inc.*, 943 F.2d 996 (9th Cir.1991) (future pension benefits). On the other hand, prior to the Civil Rights Act of 1991 the ADEA did not permit a separate recovery of compensatory damages for pain and suffering or emotional distress. *See Commissioner of Internal Revenue v. Schleier*, —— U.S. at ——, 115 S.Ct. at 2162. Plaintiff therefore may not pursue or receive such an award here. Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment is GRANTED in part and DENIED in part. Judgment is entered for defendant solely on Count III of plaintiff's amended complaint; it is

FURTHER ORDERED that plaintiff's jury demand for her Title VII claims is stricken; and it is

FURTHER ORDERED that plaintiff's claim for compensatory and punitive damages for violations of Title VII is stricken.

SO ORDERED.